UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BRIDGET HELM,

     Plaintiff,

v.                                  Case No. 3:16cv630-CJK

JEANNE VAHLE, Personal
Representative of the ESTATE OF
RYAN VAHLE, Deceased, and
S/V "PAIN KILLER," a 2002 -
38' Voyage Maxum Catamaran
sailing vessel, her engines, appurtenances,
spares, and equipment appertaining
whether on board or not,

     Defendants.
_____/

## MEMORANDUM ORDER

     This admiralty action in rem concerns the validity and priority of maritime liens claimed by both the plaintiff, Bridget Helm, and Jeanne Vahle against the S/V Pain Killer, a 38-foot catamaran sailing vessel. The parties have consented to Magistrate Judge Jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment. After a bench trial on March 24, 2017, I conclude Jeanne Vahle's actions before the arrest of the S/V Pain Killer do not warrant reducing or extinguishing her maritime

lien.  In addition, because Jeanne's provision of necessaries occurred after Bridget's, Jeanne's $7,057.91 claim has priority over Bridget's $150,000 claim.

FACTS AND PROCEDURAL HISTORY

Ryan Vahle bought the Pain Killer in 2012 for approximately $220,000.  In mid-2014, Ryan and Bridget began a relationship.  Ryan kept the boat in Pensacola, Florida, either moored or in a local marina.  In mid-2015, Ryan and Bridget used the vessel as their primary residence for a month.  The couple broke up, however, in September of that year.  During the relationship, Bridget made a number of payments for the benefit of the Pain Killer, the most significant of which was a direct payment to Coastal Bank & Trust on the preferred ship's mortgage in the amount of $95,000. (Exs. A-3, C-16).  Ryan and Bridget intended for the mortgagee to apply the $95,000 to reduce the principal due on the loan.  Bridget says her financial contributions toward the vessel total approximately $167,860.  At some point, however, Ryan and Bridget agreed to compromise the amount of Bridget's contributions at $150,000.

On February 20, 2016, Ryan went missing, having been last seen that day at an establishment on Bayou Chico in Pensacola.  Some 7 days later, Ryan's body was recovered from Pensacola Bay, offshore from the mouth of Bayou Chico.  In March, Jeanne was appointed personal representative of Ryan's estate; she funded the upkeep and storage of the Pain Killer, the sole asset of Ryan's estate, until the

vessel's arrest. (Exs. 2 – 17). With Ryan's death, a period of turmoil began in the lives of his parents, Jeanne and Mike Vahle.

On March 28, 2016, Bridget filed a "Notice of Claim of Lien" for $123,640.91 with the United States Coast Guard's National Vessel Documentation Center. (Ex. A-1). On the same day, Bridget mailed the Vahles a letter notifying them of "her financial investment in the vessel" and that "[s]he [was] prepared to satisfy the remaining first mortgage on the vessel [(which, at the time, had a balance of approximately $49,000)]," upon which she proposed to "take title to the vessel, and assume all of the ongoing expenses relative to same." (Ex. C-1). The estate initially expressed doubt as to the validity of Bridget's claim, arguing her contributions constituted gifts rather than a loan. (Exs. A-2, C-2). Subsequently, however, the parties engaged in unsuccessful settlement negotiations. (Ex. C-3).

On May 27, 2016, Bridget brought suit in state court seeking a judgment against Ryan's estate for the money Bridget loaned Ryan. (Ex. A-1). In August 2016,I yti Bridget and the estate stipulated to entry of a $150,000 judgment in favor of Bridget. (Exs. A-4, A-5). Bridget perfected the judgment by filing a judgment lien certificate with the Florida Secretary of State on August 11, 2016. (Ex. B).

In September 2016, Mike Vahle contracted a *Vibrio* bacterial infection, resulting in a severe case of necrotizing fasciitis. Mike's health deteriorated rapidly and, ultimately, his right leg was amputated, the physicians having decided that such

was required to save his life. Until November, Mike underwent intensive treatment and therapy, requiring that Jeanne and Mike make 3 trips a week from Pensacola to the University of South Alabama Medical Center in Mobile, Alabama.

After entry of the state court judgment, Jeanne and Bridget continued to discuss the possibility of transferring possession the Pain Killer to Bridget. (Exs. C-4 – C-12). The negotiations, however, soured when Bridget and Jeanne could not agree to the amount Jeanne should be reimbursed for administering the estate and maintaining the vessel. (Exs. C-4 – C-12). On November 23, 2016, plaintiff brought this in rem action pursuant to Fed. R. Civ. P. 9(h) against the Pain Killer, seeking to foreclose a maritime lien created by the provision of necessaries to the vessel under 46 U.S.C. § 31342. (Doc. 1). Bridget had the vessel arrested on December 12, 2016. (Doc. 17).

DISCUSSION

I.      Jeanne Vahle's Status

Before turning to the main dispute concerning the validity and priority of the claimed maritime liens, I must address a preliminary issue. Jeanne Vahle has only appeared in this case in her capacity as personal representative of Ryan's estate. She did not personally intervene in this action nor file an individual claim against the Pain Killer. Because Ryan's estate owns the Pain Killer, Jeanne cannot claim a maritime lien on the estate's behalf or in her capacity as personal representative. *See*

*Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1207 (5th Cir. 1978) ("[A]n owner, part owner, or joint venturer cannot hold a maritime lien.") (citations omitted); *L&L Elecs., Inc. v. M/V Osprey*, 764 F. Supp. 2d 270, 272 (D. Mass. 2011) ("The 'stranger to the vessel' doctrine dictates that owners of a vessel, or those that have authority over a vessel such that they are in a similar position to owners, are denied maritime liens.") (citations omitted).

Nevertheless, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Here, adding Jeanne as a party in her individual capacity is appropriate. Nothing could be more clear than Bridget's acknowledgement and acquiescence as to Jeanne's status as a claimant against the vessel. The thrust of Bridget's case is that Jeanne's claim should be denied, or at least denied priority, due to what Bridget characterizes as Jeanne's delaying tactics concerning the sale of the vessel. (Doc. 28). This issue formed the core of Bridget's direct examination of Jeanne, who was called as Bridget's first witness during the case in chief. The pleadings and pretrial memorandum are replete with acknowledgement of Jeanne's claim, if only to question its validity, but without arguing that Jeanne lacks status to make her claims.[1] In sum, Bridget's conduct

---

[1] The defendants' answer to the complaint notified plaintiff of Jeanne's claim by raising a single affirmative defense: "Defendant, Mrs. VAHLE, as the Personal Representative of her son's Estate, and initial custodian of the PAIN KILLER after his death, provided necessaries to the vessel for the PAIN KILLER's maintenance and safekeeping that were more recent in time than that alleged by the Plaintiff, thus, giving Mrs. VAHLE a maritime lien superior in time to the Plaintiff." (Doc.

during this case would make little sense if she did not believe Jeanne could seek relief in this action. Therefore, to conform to the parties' expectations concerning this case, and in the interest of judicial economy and fairness, Jeanne Vahle will be recognized as asserting an individual claim against the Pain Killer. *See In re Neurontin Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 366, 370 (D. Mass. 2011) ("Courts have held that parties may be added after trial has concluded 'to add a party who for some innocent reason has not been made a party to the action and whose presence is necessary or desirable.'") (*quoting Data Gen. Corp. v. Grumman Sys. Support Corp.,* 825 F. Supp. 340, 344 (D. Mass. 1993)); *see also Du Shane v. Conlisk*, 583 F.2d 965, 967 (7th Cir. 1978) (Under Rule 21, "it has been held that a party can be added [s]ua sponte by the court after judgment for remedial purposes.") (citation omitted).

## II.     Maritime Liens

"Congress has protected those who furnish supplies and other necessaries to vessels, granting such persons maritime liens against the vessel." *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1551 (11th Cir. 1990) (*citing* 46 U.S.C. § 31342); *see*

---

16, p. 2). Plaintiff's Pretrial Memorandum also indicates Jeanne potentially has a lien that could prime plaintiff's; under the heading "Each party's respective argument as to the issues," plaintiff stated, "Did Defendant's conduct and delaying tactics, such as demanding payment of improper expenses which were clearly not necessaries, including funeral catering expenses, stamps for thank you notes, and a 5% Personal Representative fee, render any or all of her claims void, invalid and unenforceable against the S/V "Pain Killer?" (Doc. 28, p. 3).

*also Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986) (A maritime lien "arises when the debt arises, and grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds."). Under the Federal Maritime Lien Act ("FMLA"), "to obtain a maritime lien, a person must: (1) provide necessaries; (2) to a vessel; (3) on the order of the owner or agent." *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1244 (11th Cir. 1999). "Necessaries" include "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). As the Fifth Circuit has explained:

> The term "necessary" under the FMLA includes most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function. Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged. These "things" may be money, labor and skill, and personal services as well as materials. It is the present, apparent want of the vessel, not the character of the thing supplied, which makes it a necessary. . . . What is a "necessary" is to be determined relative to the requirements of the ship.

*Equilease*, 793 F. 2d at 603 (citations and quotations omitted).

Both Bridget and Jeanne assert they provided necessaries for the Pain Killer that resulted in maritime liens. Bridget, however, argues that Jeanne's claim should be reduced or extinguished based on what Bridget characterizes as Jeanne's improper conduct and "delaying tactics" before the Pain Killer's arrest. (Doc. 28).

First, Bridget suggests the Vahles' reluctance to acknowledge Ryan's $150,000 debt to her unnecessarily delayed the sale of the Pain Killer, causing

needless costs and vessel depreciation. After Ryan's death, Jeanne became personal representative of her son's estate. Through counsel, Bridget and Jeanne engaged in negotiations concerning the disposition of the Pain Killer. When Bridget initially notified Jeanne of her claim on March 28, 2016, Jeanne expressed doubt as to its validity, suggesting Bridget's contributions were gifts rather than loans. (Exs. A-2, C-2). The Vahles' position was not, at that time, unreasonable, considering the only evidence of Ryan's agreement to repay Bridget $150,000 consisted of text messages between Bridget and Ryan. Moreover, as personal representative of Ryan's estate, Jeanne had a fiduciary duty to both preserve the estate's sole asset and to contest possible invalid claims against the estate. *See* Fla. Stat. § 733.607(1) ("The personal representative shall take all steps reasonably necessary for the management, protection, and preservation of the estate until distribution[.]"); *Landon v. Isler*, 681 So.2d 755, 756 (Fla. 2d DCA 1996) (noting "that a personal representative does not breach his fiduciary duty by opposing a claim that later proves to be valid" and "[i]n fact, where there is some basis for an objection, . . . a failure to object could give rise to a breach of fiduciary duty claim by the beneficiaries"). Although the estate eventually stipulated to entry of the $150,000 judgment in Bridget's favor, the decision to contest Bridget's claim from March to August of 2016 does not warrant reducing Jeanne's claim for necessaries.

Next, Bridget views Jeanne's attempt to recover a 5% personal representative fee and expenses for funeral reception catering and stamps as unreasonable because these items are not maritime necessaries. After entry of the state court judgment, Jeanne and Bridget continued to discuss the fate of the Pain Killer. (Exs. C-4 – C-12). On August 24, 2016, Bridget requested that the vessel's title be conveyed to her in exchange for cancelling the $150,000 judgment against the estate. (Ex. C-4). The Vahles initially seemed open to the suggestion, but asked Bridget to reimburse them approximately $4,200 for expenses they incurred administering Ryan's estate. (Ex. C-5). The $4,200 total included payments for the maintenance and upkeep of the Pain Killer, as well as $365.05 for funeral catering expenses and stamps. (Ex. C-6). Negotiations continued over the next 2 months. Bridget countered by offering to pay the Vahles $1,350.83 for the items Bridget believed "helped maintain the value of the vessel." (Ex. C-8). Bridget also indicated her offer was reasonable in light of the expenses she incurred due to "the delay occasioned by actions of the estate." (Ex. C-8). Jeanne rejected the offer, indicating "her desire [was] to sell the boat and go through the proper distribution of estate assets according to [Fla. Stat. § 733.707]." (Ex. C-10). Later, on November 1, 2016, Jeanne suggested she would be willing to transfer the vessel's title to Bridget if Bridget paid approximately $6,200 in expenses plus a 5% personal representative fee. (Exs. C-10, C-12). Bridget declined the offer and commenced this action. (Ex. C-12).

Jeanne's actions during the above-described negotiations do not inflict any sort of mortal blow to her claim for necessaries. Although Bridget argues Jeanne's conduct was unreasonable because funeral catering, stamps, and a personal representative fee are not necessaries, none of the physical exhibits indicate Jeanne ever claimed these items were necessaries, and she has not argued that in this suit. Instead, Jeanne asserted these claims in the context of administering Ryan's estate. *Cf.* Fla. Stat. 733.617(1) ("A personal representative shall be entitled to a commission payable from the estate assets without court order as compensation for ordinary services."). Jeanne's position, therefore, was reasonable.

I have also given consideration to the fact that Jeanne was dealing with both the death of her son and her husband's life-threatening medical condition during the relevant period of time. As Jeanne indicated during her testimony, ensuring her husband received the treatment he needed took, in her order of priorities, precedence over resolving the dispute with Bridget over the Pain Killer. These circumstances also support the finding that Jeanne did not engage in unreasonable "delaying tactics." Thus, I conclude Jeanne has a valid maritime lien for necessaries against the Pain Killer.

Because both Bridget and Jeanne hold competing maritime liens, the issue of priority must be addressed.

> Generally, competing maritime lien claims are first ranked according to class. The classes are, from highest priority to lowest, the following:
>
> (1) Expenses of justice during *custodia legis*—expenses arising from the care and operation of the ship while it is in the custody of the Court through the U.S. Marshal (not regarded as a lien, but given priority); (2) Seamen's liens (including those of the Master) for wages, maintenance and cure; and wages of longshoremen directly employed by the vessel; (3) Salvage and general average liens; (4) Tort liens, including personal injuries; (5) Preferred ship mortgage liens (U.S. flag vessels); (6) Liens for necessaries under the Maritime Lien Act of 1920; (7) State-created liens of maritime nature; (8) Maritime liens for penalties and forfeiture for violation of Federal Statutes; (9) Perfected non-maritime liens, including tax liens; (10) Attachment liens in causes of action within the admiralty and maritime jurisdiction (foreign attachment); (11) Maritime liens in bankruptcy.

*United States v. One (1) 254 Ft. Freighter, the M/V Andoria*, 570 F. Supp. 413, 415 (E.D. La. 1983); *see also* 46 U.S.C. § 31326 ("[T]he preferred mortgage lien . . . has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens)[.]").  The priority of competing maritime liens for necessaries is determined "in reverse chronological order: that is, the most recent lien possesses the superior claim."  *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 870 (11th Cir. 2010) (citations omitted). "This reverse-chronology priority system does no disservice to earlier claimants because, as with funds, when services are 'advanced for the security and protection of the vessel, they benefit the mortgagees as well as the owners.'"  *Id.* (*quoting The*

*Emily Souder*, 84 U.S. (17 Wall.) 666, 671, 21 L. Ed. 683 (1873)) (alterations omitted).

For the most part, Bridget and Jeanne do not dispute that each other's expenditures qualify as necessaries. Only a few items merit individual discussion.

First, Jeanne seeks credit for an $800 payment Jeanne's daughter Maury made to Ryan in October 2014. (Ex. 1). The court heard conflicting testimony as to whether the payment was for necessaries or for repayment of a loan Ryan made to Maury. Based on the evidence presented at trial, the claim for October 2014 payment will be denied because Jeanne did not establish the payment was for necessaries.[2] Jeanne, however, has a valid maritime lien for the remainder of her claim, which consists of $7,057.91 worth of necessaries provided to the Pain Killer between February and October of 2016. (Exs. 2 – 17).

Second, in January 2015, Bridget paid Coastal Bank & Trust $95,000 to reduce the principal of the preferred ship's mortgage. (Exs. C-1, C-16). I do not deem it apparent that a gratuitous mortgage payment qualifies as a necessary. *Cf. Equilease*, 793 F.2d at 603 ("'It is the present, apparent want of the vessel, not the character of the thing supplied, which makes it a necessary.' . . . Anchors and cables are generally considered to be necessaries, but if the vessel is fully supplied with

---

[2] Even assuming the October 2014 claim was valid, Jeanne acknowledges that, due to its timing, it would be subordinate to Bridget's. Considering the estimated value of the Pain Killer and the amount of superior claims, recovery of the $800 would be unlikely.

them, the furnishing of another anchor or cable is not 'necessary.'") (*quoting* 2 Benedict on Admiralty § 34 (7th ed. 1984)); *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*, 310 U.S. 268, 280, 60 S. Ct. 937, 84 L. Ed. 1197 (1940) ("The lien is given for supplies which are necessary to keep the ship going."). But the evidence shows Coastal Bank & Trust's decision not to declare the loan in default when Ryan stopped making monthly payments in May 2015 was based in part on Bridget's $95,000 payment. (Ex. C-16). Thus, the payment provided a real, if unquantifiable, benefit to the vessel after May 2015. "A lien for necessaries arises, pursuant to clear statutory language, when the claimant *provides* necessaries to the vessel." *Dresdner Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1274 (11th Cir. 2006) (*citing* 46 U.S.C. § 31342) (emphasis in original).

Upon the foregoing, and considering that Jeanne has already stipulated to a judgment in Bridget's favor, which judgment coincides with Bridget's claim for necessaries, I accept that the mortgage reduction was a necessary. The lien for the payment would have arisen in January 2015. *See Galehead*, 183 F.3d at 1247 ("A maritime lien is 'a special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises.'") (*quoting* Black's Law Dictionary 969 (6th ed. 1990)) (alterations omitted). Because Bridget did not provide necessaries to the vessel after 2015 (Ex. C-1), and Jeanne only

provided necessaries to the vessel in 2016 (Exs. 2 – 17), Jeanne's maritime lien is superior to Bridget's.

Bridget also seeks to classify her post-arrest payment of the Pain Killer's insurance premiums as a custodial expense entitled to the highest priority. (Doc. 32, p. 3); (Exs. C-13 – C-15); *see also Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1560-61 (11th Cir. 1987) ("Claims arising out of the care and operation of the vessel while it is in the custody of the court are not actually considered liens, as no lien can attach to a vessel while she is in judicial custody."). Courts have discretion to decide whether the provision of post-arrest necessaries should be afforded priority as a custodial expense. *See Dresdner*, 465 F.3d at 1272-73 ("[C]laims for necessaries provided to a ship after its arrest 'are paid as expenses of justice in priority to all lien claims .when the dictates of equity and good consci[ence] so require.'") (*quoting Donald D. Forsht Assocs.*, 821 F.2d at 1561). That discretion is guided by 2 factors: (1) whether the expenditure benefitted all claimants; and (2) the presence or absence of prior court approval. *See The Poznan*, 274 U.S. 117, 121, 47 S. Ct. 482, 71 L. Ed. 955 (1927) ("The most elementary notion of justice would seem to require that services or property furnished upon the authority of the court or its officer, acting within his authority, for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an 'expense of justice.'") (citation omitted); *Oil Shipping (Bunkering)*

*B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 176, 183 (3d Cir. 1993) ("[A] court does not abuse its discretion when it refuses administrative priority to an expense for fuel that is neither necessary to preserve the *res* nor ordered by the court.").

Here, Bridget has not advanced a persuasive argument for designating the insurance payment as a custodial expense. She knew the vessel had been arrested but did not seek court authorization before making the payment, and she has not articulated how the insurance benefitted Jeanne. *See Dresdner*, 465 F.3d at 1275 ("[S]ince Steamship concedes that it provided post-arrest insurance without seeking the court's imprimatur and no other piece of evidence establishes that the equities somehow favor Steamship, we are fully satisfied that the district court acted well within its discretion by declining to award Steamship a priority claim for provision of post-arrest insurance."); *see also Oil Shipping*, 10 F.3d at 178-79 ("Since the seizure revokes all authority to incur liabilities on behalf of the ship, one who renders services without first requiring the Court's permission, does so at his risk.") (citation omitted). Accordingly, I decline to assign the 2017 insurance payment priority as a custodial or administrative expense.

III.    Distribution of Sale Proceeds

Based on the foregoing, the proceeds from the sale of the Pain Killer should be distributed in the following order of priority: (1) custodial expenses (including

those of the U.S. Marshals Service and the substitute custodian); (2) the preferred ship's mortgage, which, as of March 15, 2017, has a balance of $52,183.33; (3) Jeanne's $7,057.91 claim; and (3) Bridget's $150,000 claim.

Accordingly, it is ORDERED:

1.      The proceeds from the sale of the Pain Killer should be distributed in the following order of priority: (1) custodial expenses (including those of the U.S. Marshals Service and the substitute custodian); (2) the preferred ship's mortgage, which, as of March 15, 2017, has a balance of $52,183.33; (3) Jeanne Vahle's $7,057.91 claim; and (3) Bridget Helm's $150,000 claim.

2.      Upon her request, Bridget Helm is permitted to assign her $150,000 judgment to Platinum Auto, Inc., a licensed Florida dealer, License No. VI1012772/1, for the purpose of selling the S/V Pain Killer.

3.      Bridget Helm, and/or her assignees, are permitted to bid her Final Summary Judgment in the amount of $150,000 plus interest and costs, at the Marshal's sale.

4.      The court reserves jurisdiction to enter a judgment of foreclosure, directing the sale of the S/V Pain Killer.  Counsel for Bridget Helm and Jeanne Vahle shall expeditiously confer and present to the court a proposed judgment directing the sale of the vessel consistent with the rulings herein.

DONE AND ORDERED this 7th day of April, 2017.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**